[Civ. No. 3791. First Appellate District, Division One.—August 10, 1921.]

ANGINETTE HASBROUCK, Appellant, v. SID CAVILL, Respondent.

[1] NUISANCES—MOORING OF ARK IN TIDE-WATER CREEK—ABATEMENT OF NUISANCE BY RIPARIAN OWNER. — If a person owns lands riparian to a tide-water creek, the maintenance by another of an ark alongside thereof, in such a manner that, while it floats at high tide, the landward side rests on the bank at low tide, constitutes a private nuisance, and she can maintain an action for the abatement of it.

[2] ID.—SALE OF LAND ON CORTE MADERA CANAL—DESCRIPTION OF— INTENT OF TIDE-LAND COMMISSIONERS — ABSENCE OF RIPARIAN RIGHTS.—In this action to have an ark moored in Corte Madera Creek declared a private nuisance as to plaintiff and abated, the evidence showed that plaintiff's land, title to which was derived by deed from the tide-land commissioners, extended only to Corte Madera Canal, as established by the commissioners and shown upon the recorded map by which the property was sold; and it having been the intent of the commissioners that such property should extend only to the canal line as established by them, and not to the creek, the property between the two remaining in the state, plaintiff's land was not riparian to the creek, and the maintenance of the ark on the creek was not a private nuisance as to her.

APPEAL from a judgment of the Superior Court of Marin County. Edgar T. Zook, Judge. Affirmed.

54 Cal. App.—1          (1)

The facts are stated in the opinion of the court.

Geo. Clark Sargent for Appellant.

Daniel A. Ryan for Respondent.

KERRIGAN, J.—This is an action brought by plaintiff to have an ark belonging to defendant declared a private nuisance as to her and abated. She claims no special damage, but alleges that her riparian rights on Corte Madera Creek (due to the location of her land on said creek) entitle her to access to said creek, and that the ark prevents access at the point where it is located.

The ark "Frolic," owned by defendant, is moored in Corte Madera Creek on the west side in such a way that it floats at high tide, but at low tide the landward side rests on the bank. It is moored to the shore by chains. The defendant has no license from the state to moor his ark in Corte Madera Creek, which is tide-water. Plaintiff claims that defendant, in addition to maintaining a public nuisance, maintains a private nuisance with respect to her—this claim depending on her land being riparian to the creek. The lower court gave judgment for defendant for his costs, finding that plaintiff's land was not bounded by the creek; that defendant had not entered upon nor moored a houseboat to plaintiff's land, nor to state land immediately to the north, or east of her land; that the houseboat does not cut off plaintiff's access; and that plaintiff is not deprived of use of her waterfront at point where moored, as plaintiff's land has no waterfront.

[1] If plaintiff's land is riparian to Corte Madera Creek, the maintenance of an ark immediately to the north or east of her land would constitute a private nuisance, and she could maintain an action for the abatement of it. Her title to the land is derived from a patent from the tideland commissioners, made in 1873.

In 1861 Corte Madera Creek was declared navigable as follows: "The creeks situated in Marin County known as Guaymas Creek, San Rafael Creek, Corte Madera Creek, and Saucelito Creek, are hereby declared navigable from their mouths as far as tide flows. . . . " (Stats. 1861, p. 469.)

In 1870 the tide-land commissioners of California were given jurisdiction over the tide-lands of Marin County as follows: ''Sec. 2: Said Commissioners shall have the said lands lying outside the boundary lines of said county (San Francisco) and within five miles thereof, surveyed to a depth of nine feet of water at the lowest stage of the tide, and subdivided into lots of not more than twenty acres or into lots of not less than fifty feet front by one hundred feet deep, as in the judgment of said Tide Land Commissioners, approved by the State Board, may seem fit for the best interests of the State; . . . said Commissioners shall have power to locate and establish canals and basins upon the marsh and tide lands lying outside of the exterior boundaries of the County of San Francisco, . . . whenever they deem them necessary for the purpose of drainage, navigation and the wants of commerce; and shall cause to be prepared the necessary maps, exhibiting the property as surveyed, the number, area and location of each subdivision or lot, and all other matters proper and necessary to be shown thereon. The Commissioners shall file certified copies of said maps with the Surveyor-General of the State and with the Recorder of the City and County of San Francisco, retaining the original field notes and maps of said survey in their office at San Francisco.

''Sec. 3. After the Commissioners shall have complied with the provisions of Section 2, they shall proceed to sell at public auction to the highest bidder . . . such sale shall be by lots, in accordance with the maps provided for in Section 2 of this act . . . '' (Stats. 1869–79, pp. 541, 542.)

In pursuance of this authority the tide-land commissioners on April 3, 1871, passed the following resolution: ''That open canals for the purpose of navigation, drainage, and the wants of commerce, be fixed and established . . . on and along Corte Madera Creek . . . to be called Corte Madera Canal; . . . the routes and widths of said canals to conform as near as practicable to the present meanderings and widths of the respective creeks upon which they are located.''

On May 10, 1871, the commissioners approved Tide-land Map No. 2 prepared after the establishing of Corte Madera Canal—showing the canal line and the location of lots of marsh-land to be sold.

The deed of the tide-land commissioners to Justice Uhler Haley, dated March 8, 1873, conveyed two lots, lot 24½ and lot 26. The eastern boundary of lot 26 is the boundary line in question. The call reads: "north 5.81 chains to the southerly line of Corte Madera *Canal*; thence along the same S. 61¾° E. 2.51 chains."

Tide-land Map No. 2 shows Corte Madera *Canal* as established by the commissioners as running in a generally similar line to Corte Madera Creek (the natural creek) but it is almost never identical. Along the line mentioned in the call in question there is a space of about 175 feet between the canal line and the natural creek, which is marsh-land.

[2] Plaintiff claims her line carries to the creek and that she thereby is riparian to the creek; that the Tide-land Commission did not intend to alter the line of the creek, but merely to rename the creek Corte Madera Canal, and that they probably did not observe the variation of their engineer's map from the creek, and that the calls in her deed are lines of measurement, not boundaries; that if the commissioners did intend to alter the line of the creek, they had not the power to do so, as the legislature had declared Corte Madera Creek a navigable stream, and only the legislature could alter the stream line; that fifty years have passed since the map was made and that the state has done nothing toward making Corte Madera Creek correspond with the canal line as established; that the deed to Justice Haley intended to convey riparian rights to the canal, and that plaintiff has riparian rights on the actual creek until the canal is constructed.

Plaintiff places great reliance on the case of *City of Los Angeles* v. *San Pedro etc. R. R. Co.*, 182 Cal. 652, [189 Pac. 449], to support her position that meanders are lines of measurement and not boundaries.

In the syllabus to the opinion of the supreme court of the United States in *Jefferies* v. *East Omaha Land Co.*, 134 U. S. 178–198, [33 L. Ed. 872, 10 Sup. Ct. Rep. 523, see, also, Rose's U. S. Notes] (quoted in *City of Los Angeles* v. *San Pedro etc. R. R. Co.*, *supra*), the law on that point is stated as follows: "Meander lines are run in surveying public lands bordering upon navigable rivers, not as boundaries of the tract, but to ascertain the quantity of the land

subject to sale; and the watercourse, and not the meander line, as actually run on the land, is the boundary.'' In these cases, the descriptions of land—carrying to water— were not in fact correct, and it fell to the courts to determine that the intent of the grantor that the land should extend to the water, should prevail, and not the actual calls. The intent of the grantor is the test, and it is to be derived from the whole deed, and not from the calls alone.

In the instant case it is necessary to determine whether the Tide-land Commission auctioned the land to the *canal* as established by them, or to the creek as it existed naturally. Tide-land Map No. 2 contains on its face a chart of the calls of the canal as established. The canal very clearly is not coincident with the natural creek, and we find no reason to believe the Tide-land Commission intended otherwise than its documents indicate. The tracts of marshland as divided up without exception follow the line of the canal; sometimes extending into the actual creek and sometimes leaving tracts of land untouched, depending on the line of the canal. Furthermore, the description of the land as conveyed is correct and corresponds absolutely with the map by which it was sold; the north and east boundary is the ''southerly line of Corte Madera Canal,'' etc. It is the manifest intent of the tide-land commissioners that lot 26 extend only to the canal line as established by them.

Were the description at variance with the lot as evidenced by the map by which it was sold, the map would control. (Sec. 2077, subd. 6, Code Civ. Proc.) But no such condition exists here. Since we conclude that the intent was to convey to Corte Madera Canal, the rule of construction invoked in *City of Los Angeles* v. *San Pedro etc. R. R. Co.,* *supra,* is not necessary, because the commission accomplished what it intended to do; there is no variance between geographical fact and the calls of the deed.

With regard to plaintiff's contention that this commission had no power to alter the shores of a stream declared navigable by statute, the language of the statute creating the Tide-land Commission, ''Said Commissioners shall have power to *locate* and *establish* canals . . . upon the *marsh* and *tide lands* . . . '' would seem to give them authority to do what the resolution in pursuance thereof, ''that open canals . . . be fixed and established . . . on and along

Corte Madera Creek . . . the routes and widths of said canals to conform *as near as practicable* to the present meanderings and widths of the respective creeks upon which they are located,'' caused to be done, i. e., to survey and establish a canal along Corte Madera Creek to conform as near as practicable to the present creek, and to lay out lots on the marsh-lands and to auction off the same.

However, it is not necessary here to determine whether the tide-land commissioners had or had not power to alter the present line of a stream; they had power to divide up the marsh-land (subject to the approval of the state board) and to sell it *by map;* the map showed very clearly the boundaries of the lots and showed that lot 26 was bounded by the artificial canal line—not by the creek line. It is difficult to imagine how the tide-land commissioners can be presumed to have intended to convey four acres more of land than they embodied in a description which corresponds with the course of the canal they established.

We believe this is conclusive of plaintiff's case as her other contentions have no support in law. The title to the land between plaintiff's eastern boundary and the actual creek remains in the state; since plaintiff's land is not riparian to Corte Madera Creek, she has no other right than that enjoyed by the public, of access to the creek; therefore the maintenance of an ark on the creek is not a private nuisance as to her, and a private person cannot abate a public nuisance.

Judgment affirmed.

Richards, J., and Waste, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 6, 1921.

All the Justices concurred, except Shaw, J., who was absent.